United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons and business before this honorable court are admonished with honor and given attention as the court is now sitting. God save the United States and this honorable court. Good morning, gentlemen. This is Cloutier v. GoJet Airlines. Mr. Schenberg? Yes, Your Honor. You may proceed. Thank you, Your Honor. May it please the court. After Plaintiff learned that he'd be grounded from flying due to diabetes, he waited 10 days to let GoJet know. And after the 12-week FMLA period, Plaintiff was still grounded. And after that, Plaintiff and his union showed his FMLA claim belonged in arbitration. The evidence and the lack thereof from before, during, and after the 12-week FMLA period shows that the judgment cannot stand. This case should have been arbitrated because the collective bargaining agreement includes, one, GoJet's contractual commitment to comply with the FMLA in a provision titled Family and Medical Leave FMLA. And two, a provision subjecting disputes under the contract to arbitration. Those two things together satisfy the standard for ensuring the parties to the agreement intended arbitration of FMLA claims. That intent was also demonstrated by the party's conduct. In assigned grievance, Plaintiff asserted his FMLA claim as a violation of the contract. Plaintiff testified that that was one of the things the union thought should be in there. And the same union that negotiated the agreement also then pursued the FMLA claim to the next step in the contract arbitration process. But no matter the form, Plaintiff should have lost his FMLA claims. It is undisputed that Plaintiff was not able to fly on September 2nd when the 12-week maximum period expired. Plaintiff's only response is that he could have done so, but for GoJet's interference with his FMLA rights. Plaintiff's only argument in support of that, though, is misplaced speculation that if he had only known that he only had 12 weeks, well then, three different sets of actors would have all acted differently. He would have pushed multiple doctors to do their tests earlier and report the results earlier. And all those multiple doctors would have tested and done all their reports filed earlier and gotten them to his primary care doctor earlier, who would have put all those results in a summary earlier. And then another doctor would have sent everything to the FAA earlier. And that, of course, he says, would have caused the FAA to approve him by September 2nd. Not only is all that speculation, but the evidence shows just how speculative it all is. In an effort to show that the calendar could even allow time for all of this, plaintiff told this court in his opening brief that he could have started the testing before he finished his 60-day course of metformin, the medicine he was prescribed for his diabetes. But during trial, at least two times, plaintiff testified that the opposite was true. That, in fact, he had to wait to finish until August 1st, Friday, August 1st, before any of the testing could even start. Next, plaintiff just assumes that it would be easy to get multiple doctors to schedule and report multiple tests faster. But plaintiff even admitted at trial that at one point, he could not even get his primary care doctor to return his phone calls for six days. And counsel stated on the record that the primary care doctor wasn't being cooperative. And although the FAA received all the information that it needed by August 14th, it still didn't release him by September 2nd, even though plaintiff had been calling him pretty much every day. So it's pure speculation that even if he had, quote-unquote, known that he only had 12 weeks, that anything would have been different. But more important, and speculation aside, the entire premise of this theory is legally and factually flawed. There's no regulation that requires GoJet to ensure that plaintiff knows he only has 12 weeks. Plaintiff admits that on June 2nd, he was directed to the company's FMLA policy on the company's intranet website, for which he had an ID and a password, where the information was provided to him in a section titled, in all capital letters, DURATION OF LEAVE. It says he only has 12 weeks. There's no authority that says that it's GoJet's obligation to make sure plaintiff reads the policy that he's directed to. Second, plaintiff did know that he only had 12 weeks. In his opposition to GoJet's post-trial motion, plaintiff told the district court that if he hadn't been rushed to do his certification paperwork, he would have seen something that the doctor had written, and that would have, and he would have made sure that he had changed it, and made sure that he could return within 12 weeks. Well, that shows right there that he did understand the significance of the 12 weeks. Furthermore, plaintiff's interference claim also must fail because there's no evidence to support any jury verdict that FMLA interference caused plaintiff to lose his job. Plaintiff abandoned the theory on appeal that he had relied on in the district court, and that the district court had relied on. That was the theory about being too rushed to do his initial paperwork. That theory was contradicted by the evidence, and plaintiff has now abandoned it. But on appeal, plaintiff simply cites a bunch of regulations in an email without any evidence or argument showing how any type of FMLA interference listed in the jury instruction caused plaintiff to lose his job. Plaintiff says the email shows that GoJet management instructed Tracy Ryan not to answer plaintiff's questions, and that that's FMLA interference. But the email plainly doesn't say that. The email simply tells her to consult with management before she answers any questions. But even if the email did direct her not to answer any questions, plaintiff still hasn't pointed to any evidence that he asked any questions, or that he asked any questions that went unanswered, or that he asked any questions that went unanswered that somehow caused him to lose his job. Now, in another case, the retaliation finding in this case could also serve as the basis for the interference finding, but it can't here because, as the district court took pains to explain, that would leave the two verdicts irreconcilable. Plaintiff's FMLA interference claim fails for yet another reason as well. The law and the jury instructions require that plaintiff must have given notice that he would need leave as soon as it was practicable to give GoJet that notice. Now, the purpose of the regulation is to give the employer as much time as possible to prepare. When it's possible to do so, the regulation says the employee has to give 30 days notice. When that's not possible, the regulation and the jury instructions require notice as soon as practicable. Now, plaintiff learned he had diabetes and was grounded on June 2nd, but he did not tell GoJet he was grounded for 10 days. And there's no evidence, no evidence that plaintiff could not have given that same exact notice to the same exact person soon. There's also no evidence that he made any effort to give notice any sooner. What the evidence does show is that plaintiff waited days and days, and he decided that he would notify GoJet when he thought it was important enough to do so. He testified he had to focus on his simulator training, and he wasn't scheduled to fly for a few days anyway, and he didn't know much about diabetes then. But none of those excuses addresses the point, the salient legal point, that he did not inform GoJet as soon as it was practicable for him to do so. And that's what the law and the jury instructions require. Nor was there any obligation for GoJet to personally tell plaintiff when he had to get notice. Until an employee gives notice of a need for leave, all the employer has to do is post and provide basic FMLA information to plaintiff, which GoJet did here. The information was not only posted the old-fashioned way, it was provided to plaintiff on an intranet website, for which he had his own ID and password, in an electronic handbook of policies, in an FMLA policy, titled in bold and all caps, REQUESTS FOR AND APPROVAL OF LEAVE, that explained that notice needed to be given as soon as practical. The FMLA judgment against GoJet simply cannot stand. The interference verdict should be vacated for any of the four reasons I've discussed, and the entire FMLA verdict should be vacated for any of the four reasons I've discussed, and the entire FMLA verdict for the first two reasons. And I would reserve the balance of my time for rebuttal. Thank you. Thank you, Mr. Shenberg. Mr. Grossman? May it please the Court. My name is Richard Grossman, and I'm representing the plaintiff here, John Cloutier. Counsel references the fact that this case shouldn't have been arbitrated, that it should have been arbitrated, that it should have really been thrown out because they had to go to arbitration. I've cited numerous cases which demonstrate that the provision that is in the collective bargaining agreement is a generalized provision which has received negative reviews in virtually every case in this district, certainly. Judge Packold's decision in which a virtually identical phrase is used, FMLA should be provided in accordance with the law. Well, of course, it couldn't be any different. And it's ironic that counsel insists that this case couldn't have been arbitrated because they refused to arbitrate. The record is clear that the union filed a petition to arbitrate, and they refused to do so. So what's good for the goose is good for the gander. If they are insisting, it cuts both ways, that somehow the union's insistence that this provision could be arbitrated is somehow decisive of the issue. What about their refusal to arbitrate? I think the record is they refused to arbitrate for a year, and they insisted that they didn't have to arbitrate. In any event, I believe that you'll find that the case law is in ways on the side of the claim that this case was appropriately presented to a federal court, that the arbitration provision, in order for there to be a binding arbitration provision, you need to have it be incorporated specifically. The reference to FMLA here is a glancing reference in a parenthetical, and then it says it's to be provided in accordance with the law. Well, of course, and there's a Supreme Court case that I cite. Justice Scalia said this just looks like they're preserving the principle that all these agreements should be construed in accordance with the law. Of course, this couldn't be otherwise. In any event, I believe you'll find that this case was properly presented to a federal court. With regard to the FMLA verdict, counsel attacks the jury verdict on numerous grounds, saying that, first, it's speculative, that Mr. Cloutier could have actually gotten all these people to do all the things that would have been necessary for him to get back to work before September 2nd. I believe he came back a day later, in any event. But, A, the jury found, and the judge defended it in their motion to overrule the jury's verdict, that that's a permissible, it was permissible for the jury to find that Go-Jet violated my client's rights by not giving him any of the documents that are required under the FMLA. to actually administer this claim properly. They gave him only five days to certify instead of the required time. And there's also, in terms of the intent of Go-Jet to comply with the law, there's an email in which the chief of the division writes to another person and says, let me know as soon as Cloutier comes back. We're going to fire him regardless. And I believe that it's appropriate for the jury to take that into consideration. In any event, the bottom line is that all of these things are jury questions, which the jury is supposed to take in conflicting pieces of evidence and make a decision as to what they find is a reasonable and likely interpretation of the events. They concluded that Go-Jet violated my client's rights by not giving him the appropriate documents, by rushing his certification. And the fact is that when they say that, well, he didn't notify them as soon as possible, they're insisting on some kind of hyper-technical enforcement of a regulation that was only listed on a website. They had no, as I think the evidence was, Go-Jet has no human resources department. And there was nobody for him to report to. And he was unaware of that there was something about FMLA in this website he testified. So the bottom line on it all is that these are jury questions in which the jury was entitled to interpret Go-Jet's actions as interfering with my client's FMLA rights and finding that he, in fact, was deprived of rights that he had under the law. And the jury so found the judge upheld it and this court ought to uphold it. I'd appreciate it if the court has any questions, specific questions that they would like answered. It appears so. Counsel, just go ahead. Okay. So ultimately, I would ask that the court affirm the judge's decision here denying their motion to overrule the jury's verdict and that the court find that this case was properly in federal court because the arbitration provision that counsel's insisting on is not the kind that gets enforced because it didn't specifically incorporate a specific federal law which then is accompanied by a provision in the agreement that says you must arbitrate this statutory right. That's not in this collective bargaining agreement and it shouldn't be confused with these other cases in which there is a specific statute and then a sentence that says and this statutory right shall be arbitrated. So it was properly here. The jury made proper findings and we're asking the court to affirm the decision of the trial court. Any further argument, counsel? No. All right. Mr. Cherenberg. Thank you, Your Honor. I'm going to address first Plaintiff's cross appeal a little bit awkwardly here since he hasn't made an argument in favor of it but I'll go ahead and do that with my remaining time and then I want to get back to some of the points he made on our appeal. The district court did not err much less clearly err when it determined that Plaintiff would have kept earning the monthly minimum at GOJED had he stayed there. Certainly plausible that Plaintiff would have kept doing what he had been doing for years prior to when he left GOJED and that is earning only the monthly minimum. Plausibility is all that is required. Furthermore, the district court also plausibly explained why it found unpersuasive Plaintiff's claim that he would have flown more at GOJED as he did at SkyWest later. The district court was unpersuaded that he would have flown more at GOJED given that he didn't need to to make the same money and in light of the many other time commitments that he had including a law preference. The district court did not err much less abuse its discretion when it deducted actual projected SkyWest earnings in calculating Plum Bay and did not pretend that Plaintiff would have simply flown at GOJED only the fewer hours that he would have flown at SkyWest only the fewer hours that he would have flown if he stayed at GOJED. Plaintiff doesn't cite any authority that the district court was required to calculate Plum Bay as he suggests or even that it would have been acceptable to do so. The district court followed the law when it determined Plum Bay by deducting projected SkyWest earnings from projected GOJED earnings. The only authority for Plaintiff's theory are National Labor Relations Act cases which are distinguishable on multiple grounds including that even the NLRB acknowledges that that theory makes employees more than whole which is contrary to the Seventh Circuit view of damages in FMLA cases and NLRA remedies serve a different purpose, remedial, also punitive though and the burden of proof is reversed in those cases. Plaintiff is not so much suggesting that the district court abused its discretion applying the law as he is suggesting that the law should simply be different than what it is but there's no authority for that. The district court did not err much less abuse its discretion when it denied Plaintiff's Rule 59E post-trial motion. The district court found that those arguments were forfeited because objections to GOJED submissions regarding projected SkyWest earnings could have been made in the joint status report when both parties made a joint submission and Plaintiff did in fact object to GOJED submission in that joint status report but not on the grounds that then later asserted in the Rule 59E motion and Plaintiff actually endorsed GOJED's SkyWest earnings numbers by relying on them to come up with this 95-hour figure that's in footnote 3 of the joint status report. Furthermore, Plaintiff forfeit this Rule 59E miscalculation argument again on appeal by failing to address the fact in its opening brief that the district court had in fact ruled that all these arguments were forfeited. The final point in the cross-appeal is that the district court abused its discretion by allowing the parties to make after-trial submissions on front page. The district court did not err at all much less abuse its discretion when it did that. This court has specifically allowed that practice, I think in the Downs case we cite, that the district court is free to take evidence even after the trial is over, particularly on front page. Moreover, Plaintiff waived any objection to the entire procedure when it fully participated in a joint submission without objection, including by providing both GOJED and SkyWest calculations for projected future earnings. I'm sorry, you said future earnings? Yes, this is all in the context of determining future earnings. We haven't talked much about money here, so is that $400,000-something? Yeah, the cross-appeal is all about how the district court calculated damages. Plaintiff's cross-appeal. And most of it is all about how the district court calculated front-page earnings. And that's our point, is that the district court did not err at all. It certainly did not do so under the standard of review or calculation of damages. And so, again, the district court determined what Plaintiff would have flown at SkyWest or would have flown at GOJED if he had stayed at GOJED. It did that based on his historical performance at GOJED, which was to only earn the monthly minimum. Plaintiff's argument is that just because he flew more at his subsequent employer, SkyWest, that that means he would have done so had he stayed at GOJED. But the district court didn't buy that argument, and it didn't buy it because the evidence supports that Plaintiff had always just flown the monthly minimum when he was at GOJED. And it's certainly plausible to conclude that he would have kept on doing what he had been doing. And the district court explained why he didn't believe Plaintiff's testimony when he said, well, I flew more at SkyWest, and therefore I would have also flown more at GOJED. The point was he didn't need to fly more hours to make exactly the same money because the salary was so much higher at GOJED. And he had all these other time commitments, including a law practice. And so the district court was basically saying, I think he would have kept doing what he had been doing because that's all he needed to do to make the same exact money. And he had a lot of other things going on. So without the need for more money, I don't think he would have flown more hours had he stayed at GOJED. And it's a similar point to the second one. Plaintiff is arguing that the district court, when it calculated the projected earnings at SkyWest for purposes of deducting them for the front pay calculation, should have assumed that, well, even though he said he flew more at SkyWest, the district court should have pretended that he only would have flown the lower number than he did fly at GOJED. It's all based on a theory that only appears in National Labor Relations Act cases. It's got no support in the Seventh Circuit or any other circuit for FMLA cases. And again, Rule 59E motion, which again challenges the district court's calculation of front pay, saying that the district court simply took GOJED's submission from the joint status report and complains that GOJED's submission contained a bunch of errors. What the district court found was it was too late to raise all that in a post-trial motion. He could have raised it earlier. And again, the entire process of taking this joint status report after the trial was over, plaintiff challenges that too, but that's a completely proper procedure. Well, let me turn back to Plaintiff's response to the arguments that I made earlier. With regards to the arbitration, I need to be very clear here that GOJED never refused to arbitrate. The union filed this case in arbitration because the union that negotiated the agreement understood that the FMLA claims were in fact contractual. GOJED did, once the case got to arbitration, say, hey, you haven't filed the proper procedures. But objecting to the fact that the union didn't file the proper, follow the proper procedures is not a challenge to the forum. The forum should have been arbitration as shown by the fact that Plaintiff's own union that negotiated the agreement and should know what it means filed those claims in arbitration. Plaintiff's argument also that, well, all they promised to do was follow the law, and of course they had no choice but to follow the law. That argument proves too much because if that argument were true, then no contractual commitment to follow a statute could ever be the basis of an arbitration under 14 Penn Plaza or the Supreme Court's decision in writing. The argument proves too much. Clearly the right case anticipates that you can have a promise to follow a statute. That makes it a contractual commitment. And if there's another provision that says contractual commitments are subject to arbitration, well, then that statutory plan needs to go to arbitration. There are some other cases that have ruled differently, but frankly, those cases simply read right and 14 Penn Plaza too narrowly. They suggest that it all has to be put together in one nice little package. But the cases that I've cited and the right case, the Supreme Court's decision shows that no, it can be in two different pieces. Plaintiff's main argument against, in support of the FMLA verdict, it seems to be, well, that's what the jury found. Well, of course that's what the jury found. That's why we're here. The point is there's no evidence to support what the jury found. There's no evidence at all. It's pure speculation. And I think it's quite telling that the district court didn't cite any evidence in its orders either. It also simply said, well, the district court, the jury found this. And so that's what it is. That misses the point here. There's no evidence to support what the jury found. It's speculation. And it's speculation that's contradicted by the evidence. And on that point, even though Plaintiff abandoned this whole, I didn't have enough time to do the initial certification paperwork in his appellate briefing. Let me just briefly say that the reason Plaintiff probably abandoned it, the reason that it was wrong from the get-go, which we lay out in our opening brief, is that the whole argument is, well, if I had had more time to see the doctor's initial certification, I would have noticed that she wrote July 31st. And I would have done something about that. But in fact, Plaintiff testified first. He said, he testified, even if I noticed it wouldn't have mattered because I didn't think what the doctor had to say mattered. It was all up to the FAA anyway. And that is confirmed by the fact that Gojek sent Plaintiff an email that confirmed that the dates of his leave ended on July 31st. He wasn't rushed when he got that email, but he still did nothing. So there is again, even in the abandoned theory, no evidence to show that there was any FMLA interference that cost Plaintiff his job or any other damages in this case. Your honors, the FMLA judgment against Gojek should be vacated because the case should have been arbitrated. Plaintiff could not fly by the end of the 12-week period. There's no evidence to support a jury finding under the jury instructions that FMLA interference caused Plaintiff to lose his job. And there's no evidence that Plaintiff gave notice as soon as practical. The cross appeal then becomes moot, but in any event, all four points on the cross appeal lack merit. Thank you very much. Thank you, Mr. Schoenberg. Mr. Grossman, you didn't raise your cross appeal, but I'll give you an opportunity to limit yourself on argument to damages only. Okay. So the issue there is we contend that the judge erred because he had before him information which suggested, and for instance, the trial judge said, well, he was busy and he had side practices, right? But the facts were, the actual fact was that he was working 95 hours a week. And I'm sorry, a month. And that, so the judge, when he made a decision that the front page should be based on 75 hours, was actually ignoring the evidence that my client could fly 95 hours. And therefore, it would be somewhat anomalous at least to say, well, he's too busy to fly the number of hours that he suggests when he's actually doing that. So we suggest that there's somewhat of a logical gap there. And therefore, the calculation of damages should have been according to the 95 hours instead of the 75 hours. And we make the point that if you take the way his, you're forcing him to kind of work for free. If he has to make up at SkyJet by flying 20 extra hours, what he would make if he only flew 75 for GoJet? It seems as some form of involuntary servitude almost. If you're forcing him to, in order to make the same wages, to fly an extra 20 hours. So we believe that there has been no error there. And that the, I mean, so there was an error in the way that the judge calculated the front page damages. And that should be adjusted to reflect reality, which was that he was flying 95 hours instead of the 75 hours, which was used as the basis for the award. Thank you, Mr. Wilson. Thanks to both counsel and the case will be taken under advisory.